1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VICTOR M. VILLASENOR, )
 )    No. C 04-02972 JW (PR)
   Petitioner, )
 )    ORDER DENYING PETITION FOR
   vs. )    A WRIT OF HABEAS CORPUS
 )
JOSEPH MCGRATH, Warden, )
 )
   Respondent. )
 )
_____ )

        Petitioner, a California prisoner currently incarcerated at the California State

Prison in Solano, California, and proceeding pro so, seeks a writ of habeas corpus under

28 U.S.C. § 2254.  Petitioner alleges the following claims for federal habeas relief: (1) he

was denied effective assistance of counsel in violation of the Sixth Amendment; (2) he

was subjected to prosecutorial misconduct, in violation of his right to due process; and (3)

his sentence violates the Eighth Amendment proscription against cruel and unusual

punishment.  This Court found these claims, liberally construed, were cognizable and

ordered respondent to show cause why a writ of habeas corpus should not be granted.

Respondent has filed an answer to the order to show cause, and petitioner has filed a

traverse.

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\8.20.2007\04-02972 Villasenor02972_deny.wpd

1

**BACKGROUND**

2        In 2001, petitioner was charged and convicted in Sonoma County Superior Court

3  of several offenses relating to the manufacture of methamphetamine.  The California

4  Court of Appeal set forth the following summary of the evidence:

5                Beginning late in the evening on June 11, 2001, and continuing to
          the early morning hours the following day, Special Agent Mitchell Fox of
6          the California Bureau of Narcotics Enforcement (BNE) conducted a
          surveillance at a residence located on Piner Road in Santa Rosa.  Using
7          night vision goggles, Agent Fox watched as appellant and two other
          Hispanic men moved objects around the outside of the property including a
8          large plastic trash barrel, a glass flask, and tubing material.  After several
          hours of work, the men loaded a five-foot compressed gas cylinder into a
9          car and drove away.
                BNE Agent John Marsh followed the car and stopped it.  Appellant
10          and the other men in the car jumped out and fled.  Marsh pursued appellant
          and found him about 100 yards away hiding under a bush.
11                BNE Agent Jeff Cameron served a search warrant at the Piner Road
          property near 3:00 a.m. on June 12, 2001.  He found a large, fully operating
12          methamphetamine laboratory.  Among the items recovered were a 22-liter
          flask containing liquid methamphetamine, a large amount of ice, 352,000
13          pseudoephedrine pills, a 32-gallon trash can containing an aqua-colored
          liquid, electric cook pots, three pounds of red phosphorous, 13 cans of lye,
14          and 50 pounds of iodine flakes.  According to Agent Cameron, this was a
          "very large-scale" methamphetamine laboratory that had been operating for
15          a long period of time.  It cost about $100,000 to set up a laboratory of that
          magnitude.
16                . . .
                Appellant testified on his own behalf.  He admitted being at the Piner
17          Road property on the night in question.  However, he claimed he was
          simply waiting for a ride back to his home in San Jose.  Appellant said he
18          had no idea methamphetamine was being manufactured.

19  People v. Villasenor, No. A098153, slip op. 1-2 (Cal.Ct.App. Apr. 4, 2003) (Resp. Ex. C).

20        A jury found petitioner guilty of the following charges: (1) manufacturing

21  methamphetamine (Health & Safety Code  § 11379.6(a)[1]) (count one); (2) unlawful

22  possession of pseudoephedrine with the intent to manufacture methamphetamine (§

23  11383(c)(1) (cont 2); and (3) unlawful possession of hydriotic acid (§ 11383(c)(2)) (count

24  3).  The jury also found true allegations that the methamphetamine solution exceeded 25

25

26        [1] Further statutory references are to the Health and Safety Code unless otherwise
stated.

27

28  Order Denying Petition for a Writ of Habeas Corpus
   N:\Pro - Se\8.20.2007\04-02972 Villasenor02972_deny.wpd        2

United States District Court

For the Northern District of California

1  gallons, and acquitted him of a fourth count, for disposal fo a hazardous controlled

2  substance.  Petitioner waived a jury on the prior conviction enhancements, and the trial

3  court found true that he had a prior prison conviction (Cal. Pen. Code § 667.5(b)), had

4  been convicted of a felony (§ 11370.2(b)), and had suffered a prior conviction under the

5  Health and Safety Code (§ 1203.07(a)(11)).  The trial court sentenced petitioner to a term

6  of 19 years in state prison.

7          The California Court of Appeal affirmed the conviction, and the California

8  Supreme Court denied review.  Habeas petitions filed in all three levels of the California

9  courts were also denied.

10                                    **DISCUSSION**

11  A.    Standard of Review

12         This court may entertain a petition for a writ of habeas corpus "in behalf of a

13  person in custody pursuant to the judgment of a State court only on the ground that he is

14  in custody in violation of the Constitution or laws or treaties of the United States."  28

15  U.S.C. § 2254(a).

16         The writ may not be granted with respect to any claim that was adjudicated on the

17  merits in state court unless the state court's adjudication of the claim: "(1) resulted in a

18  decision that was contrary to, or involved an unreasonable application of, clearly

19  established Federal law, as determined by the Supreme Court of the United States; or (2)

20  resulted in a decision that was based on an unreasonable determination of the facts in

21  light of the evidence presented in the State court proceeding."  Id. § 2254(d).

22         "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

23  state court arrives at a conclusion opposite to that reached by [the Supreme]  Court on a

24  question of law or if the state court decides a case differently than [the] Court has on a set

25  of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

26  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if

27

28  Order Denying Petition for a Writ of Habeas Corpus
    N:\Pro - Se\8.20.2007\04-02972 Villasenor02972_deny.wpd          3

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

A federal habeas court may grant the writ it if concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.    Claims and Analysis

        1.    Ineffective Assistance of Counsel

                Petitioner claims that his conviction is unconstitutional because he received ineffective assistance of counsel in violation of his Sixth Amendment right to counsel. The Sixth Amendment right to counsel includes the right to the effective assistance of

United States District Court

For the Northern District of California

counsel.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984).  To succeed on a claim of ineffective assistance of counsel, a petitioner must establish that (1) counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms; and (2) the petitioner was prejudiced by counsel's deficient performance, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id.  With respect to the latter, prejudice inquiry, a "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  Id.  Furthermore, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies.  See Strickland, 466 U.S. at 697; Williams v. Calderon, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice), cert. denied, 516 U.S. 1124 (1996).

A habeas petitioner has the burden of showing through evidentiary proof that counsel's performance was both deficient and prejudicial.  See Toomey v. Bunnell, 898 F.2d 741, 743 (9th Cir. 1990); Rios v. Rocha, 299 F.3d 796, 813 n.23 (9th Cir. 2002) (rejecting ineffective assistance of counsel claims where petitioner failed to produce evidence of prejudice).  In addition, the petitioner must establish that the state court, in denying petitioner's claims, "applied Strickland to the facts of his case in an objectively unreasonable manner."  Bell v. Cone, 535 U.S. 685, 699 (2002).

Petitioner alleges 11 specific failures in counsels performance.  The court addresses each of these in turn.

### a.   Examination of Agent Heredia During Preliminary Hearing

Petitioner complains that counsel failed to request the hand written notes of Agent Heredia for purposes of cross-examination at the preliminary hearing.  At the preliminary hearing, Heredia testified from a typed police report that Agent Fox identified petitioner

United States District Court

For the Northern District of California

1    as one of the men at the methamphetamine lab.  Petitioner asserts that if counsel had

2    requested Heredia's hand written notes, he could have compared them to the typed report

3    to see if there were any typographical errors in the transcription.

4         Petitioner has not established prejudice from this error.  To begin with, petitioner

5    does not identify any transcription errors in the police report that counsel would have

6    discovered if he had requested Agent Heredia's notes.  Cf. Bragg v. Galaza, 242 F.3d

7    1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001) (petitioner's mere

8    speculation that witness would have given helpful information if interviewed by counsel

9    and called to the stand is not enough to establish ineffective assistance); cf. also Alcala v.

10   Woodford, 334 F.3d at 862, 872-73 (9th Cir. 2003) (to succeed on a claim that counsel

11   should have called favorable witness, petitioner must identify the favorable testimony the

12   witness was willing and available to provide); see also United States v. Berry, 814 F.2d

13   1406, 1409 (9th Cir. 1989) (same).  Furthermore, the record indicates there were no errors

14   that Agent Fox identified petitioner at trial as one of the men at the methamphetamine lab

15   (Resp. Ex. B at 60), indicating that there were no transcription notes in the police report

16   with respect to Agent Fox's identification of petitioner.  Under these circumstances,

17   petitioner has not established that counsel's failure to request Agent Heredia's notes had

18   any effect on the outcome of the trial.

19              b.    Funds for an Independent Criminalist Expert

20        Petitioner complains counsel failed to request funds for an independent criminalist

21   expert to analyze the liquids found in the laboratory, petitioner's clothing, and

22   fingerprints.  As with the previous claim, petitioner does not indicate what favorable

23   evidence, if any, such an expert would have found.  "Speculation about what an expert

24   could have said is not enough to establish prejudice" under Strickland.  Grigsby v.

25   Blodgett, 130 F.3d 365, 373 (9th Cir. 1997).   Here, the criminalist who testified as to the

26   nature and amount of liquids found had ample qualifications as an expert, and petitioner

27

28   Order Denying Petition for a Writ of Habeas Corpus
     N:\Pro - Se\8.20.2007\04-02972 Villasenor02972_deny.wpd          6

does not suggest any basis for believing that an independent expert would have made different findings. Furthermore, petitioner was convicted based on Agent Fox's eyewitness testimony and identification of petitioner at the crime scene, not based on fingerprints. Thus, a fingerprint and clothing expert would not have been able to address the reliability of such identification testimony. In sum, petitioner's claim that counsel should have enlisted additional experts fails for want of any showing of prejudice.

c.    <u>Jury Instruction Regarding "They"</u>

Petitioner claims counsel was ineffective in failing to request a jury instruction on the use of the word "they" in witness testimony to refer to petitioner and the other men found at the methamphetamine lab. The record indicates, however, the trial gave such an instruction, as follows:

> There has been evidence in this case indicating that a person other than defendant was or may have been involved in the crime for which the defendant is on trial. There may be many reasons why that person is not here on trial. Therefore, do not discuss or give consideration as to why the other person I snot being prosecuted in this trial or whether he has been or will be prosecuted. Your duty is to decide whether the People have proved the guilt of the defendant on trial.

(Resp. Ex. A at 179.) Counsel cannot be found ineffective in failing to request an instruction that was given.

d.    <u>Law Enforcement Radio Transmissions or Tapes</u>

Petitioner complains that counsel failed to request radio transmissions or tapes of law enforcement communications prior to petitioner's arrest. Agent Heredia indicated that Agent Fox communicated with him by radio prior to petitioner's arrest, including a description of the suspects at the lab and what they were doing. There is no indication, however, that these transmissions were recorded, however, nor is there any indication that anything said in these transmissions would have been helpful to petitioner. It may be true, as petitioner argues, that counsel would have "nothing to lose" in requesting recordings of any of these transmissions. However, as with the claims described above,

Order Denying Petition for a Writ of Habeas Corpus
N:\Pro - Se\8.20.2007\04-02972 Villasenor02972_deny.wpd

7

1    in the absence of any indication beyond petitioner's own speculation that the recordings
2    existed or would have been helpful, there is no basis for finding the failure to request such
3    recordings was prejudicial.

4            e.      <u>Night Vision Goggles</u>

5          Petitioner claims counsel was ineffective in failing to request for inspection the
6    night vision goggles Agent Fox used.  According to petitioner, this would have
7    established that goggles make colors appear "green with shades," which could have been
8    used on cross-examination of Agent Fox's description of petitioner and petitioner's
9    clothing.  However, Agent Fox did not use colors to describe petitioner or his clothing, he
10    only used "white" "dark" and "grey" in his description.  (Resp. Ex. A at 58, 73.)
11    Moreover, Agent Fox testified light from a nearby doorway illuminated the suspects, and
12    that this light allowed him to see them, in addition to the night vision goggles.  (<u>Id.</u> at 71-
13    73, 76.)  Consequently, Agent Fox's inability to see colors through the night vision
14    goggles would not have any impact on his description and later identification of petitioner
15    as one of the suspects.  Counsel's failure to request the goggles to pursue this line of
16    questioning was therefore neither deficient nor prejudicial.

17            f.      <u>Review of Video Tape of Laboratory</u>

18          Petitioner complains that counsel failed to review a videotape of the lab that was
19    played at trial.  Trial counsel indicated, on the record, that he was aware of the contents of
20    the tape, however.  (Resp. Ex. B at 197-98.)  Petitioner asserts that if counsel had
21    reviewed the tape with petitioner, petitioner could have pointed out "what he touched and
22    where he went inside the property to help counsel to pan a defense." (Petition at 11.)  At
23    trial, however, petitioner's defense was that he spent the whole time waiting in the truck
24    for a ride, except for a single instance in which he helped move a cannister.  Petitioner's
25    pointing out the items he touched and where he went inside the property would have been
26    inconsistent with his own testimony and his defense at trial that he remained outside the

United States District Court

For the Northern District of California

1  property in a truck.  A trial attorney has wide discretion in making tactical decisions,

2  including avoiding inconsistent defenses.  See Correll v. Stewart, 137 F.3d 1404, 1411-12

3  (9th Cir. 1998).  Trial counsel's failure to review the tape with petitioner in order to

4  obtain, at best, evidence that would have been inconsistent with petitioner's defense did

5  not amount to ineffective assistance.

6  g.    Heredia's Expert Testimony

7  Petitioner complains counsel failed to object to Agent Heredia's expert testimony

8  regarding the laboratory and the nationality of the persons operating it because Heredia

9  was never "declared" an expert witness.  (Petition at 11.)  Counsel cannot have been

10  ineffective for failing to raise a meritless objection, however.  See Juan H. v. Allen, 408

11  F.3d 1262, 1273 (9th Cir. 2005).  Under California law, testimony about a matter beyond

12  common experience from someone with special training or knowledge is admissible.  Cal.

13  Evid. Code § 792(a).  The witness need not be deemed or designated by the court as an

14  expert, however.  Id. at § 801.  As there was no basis under California law to object to the

15  testimony of Agent Heredia on the grounds that he had never been declared an expert,

16  counsel's failure to do so was neither deficient nor prejudicial.

17  h.    Jury Instruction Regarding "Illegal Mexican"

18  Petitioner claims counsel was ineffective in failing to request a jury instruction that

19  "not every illegal Mexican is a methamphetamine manufacturer and/or is involved in

20  illegal drugs."  (Petition at 12.)  Petitioner complains that Agent Heredia's testimony

21  suggested that to be the case, and the jury might have inferred his guilty simply based on

22  the fact that petitioner himself is an immigrant from Mexico in this country illegally.  To

23  begin with, there was no evidence or argument at trial that petitioner had immigrated here

24  illegally.  Secondly, Agent Heredia testified about the operations and staffing of

25  methamphetamine labs that are run by Mexican nationals, including those that

United States District Court

For the Northern District of California

1   immigrated to this country illegally.  (Resp. Ex. B at 193-94, 198-99.)[2]  He never

2   testified, and the prosecution did not argue, that petitioner was an illegal immigrant, a

3   Mexican national, or that he was guilty based on his Mexican nationality.  Defense

4   counsel cannot be faulted for failing to request an instruction that not all illegal

5   immigrants from Mexico are involved in the drug trade because, besides being a matter

6   that is presumably of common knowledge to the jury, there was no evidence to that effect

7   at trial.

8                        I.       Testimony of Amalia Hernandez

9   Petitioner complains counsel failed to secure the presence of Amalia Hernandez[3] to

10  testify at trial.  Petitioner claims that she could have testified that she did not see

11  petitioner in the house and that he had been at the property for only three hours.  In Dows

12  v. Wood, 211 F.3d 480 (9th Cir. 2000), the Ninth Circuit denied the petitioner's claim

13  that counsel had been ineffective in failing to call a witness because the petitioner

14  provided no evidence, beyond his own "self-serving affidavit," that the witness would

15  have provided helpful testimony, such as "an affidavit from the alleged witness."  211

16  F.3d at 486-87; see also Berry, 814 F.2d at 1409 (rejecting, on direct appeal, claim that

17  counsel was ineffective where defendant did not indicate what testimony excluded

18  witnesses would have provided); cf. Alcala, 334 F.3d at 872 & n. 3 (distinguishing, inter

19  alia, Dows and Berry; finding ineffective assistance of counsel where petitioner submitted

20  interviews reflecting testimony missing witnesses would have provided).  Similar to

21  Dows, petitioner here does not provide affidavits from Hernandez, or any evidence other

22  than his own statements in the petition, showing what testimony she would have provided

23  or that she was available to provide such testimony at trial..  Under such circumstances,

24

25          [2]The California Court of Appeal explained such evidence was relevant to explain to
    the jury the operation and structure of methamphetamine labs.  (Resp. Ex. C at 5.)

26
            [3]Hernandez was arrested at the scene but was not charged until the preliminary
27  hearing.

28  Order Denying Petition for a Writ of Habeas Corpus
    N:\Pro - Se\8.20.2007\04-02972 Villasenor02972_deny.wpd          10

petitioner has failed to show counsel was ineffective in failing to call Hernandez as a witness.

j.      Testimony of Jesus Martinez

Petitioner complains that counsel failed to call Jesus Martinez to testify ant the sentencing hearing, or to interview him for purposes of a new trial motion.  Martinez was the person who rented the sheds housing the lab.  Martinez was arrested and pled guilty to charges arising from that activity.  Martinez was called to testify at trial about the individuals operating the lab, but he invoked the Fifth Amendment privilege against self-incrimination and did not testify.  Petitioner asserts that Martinez could have revealed new information exonerating petitioner that could have been used at sentencing or in a motion for a new trial.  Again, like the petitioner in Dows, petitioner fails to include an affidavit or any other evidence beyond his own self-serving statements, as to what testimony Martinez would have provided, and whether it would have hurt or helped petitioner.  More importantly, even if Martinez had information favorable to petitioner, his invocation of the Fifth Amendment privilege against self-incrimination at trial meant that he would not have testified at the sentencing hearing or provided any sworn affidavits in support of a new trial motion.

k.      Release of Search Warrant Affidavit

Petitioner claims that counsel was ineffective in failing to seek an order for release of the affidavit in support of the search warrant, which affidavit included confidential names.  Petitioner would have to show both that counsel should have made the motion and that there is a reasonable likelihood of success on the motion.  See Juan H., 408 F.3d at 1273.  A motion to unseal the warrant was filed by co-counsel, and the trial court, after conducting a hearing, ordered the prosecutor to provide some of the information in the affidavit, but kept the remainder of the affidavit sealed.  Petitioner argues that counsel should have filed a petition for a writ of mandamus challenging the superior court's order.

Petitioner does not cite any authority or suggest any argument that could have been raised in such a petition as to why the superior court's decision was incorrect.  As there is no indication that an attempt by counsel to challenge the superior court's decision in a mandamus petition would have had any merit, petitioner has failed to show that counsel should have filed such a petition or that there is a reasonable probability that such petition would have been successful.

In sum, petitioner has failed to show that counsel's performance was deficient and prejudicial at trial, and as a result, habeas relief is not warranted on his claim of ineffective assistance of counsel.

### 2.  Prosecutorial Misconduct

Petitioner claims that his right to due process was violated because the prosecutor committed misconduct.  A defendant's right to due process is violated if misconduct by the prosecutor rendered the trial "fundamentally unfair" in violation of due process.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986).  In order to determine if prosecutorial misconduct occurred the court must (1) look to see if the prosecutor's actions were improper, if so then (2) whether such conduct infected the trial with unfairness.  Id. Petitioner alleges three instances of misconduct, which the Court addresses in turn.

### a.  Opening Argument

Petitioner argues the prosecutor committed misconduct by arguing to the jury in his opening statement that after the evidence is presented that the jury would be convinced, and there would be no doubt, as to petitioner's guilt in participating in methamphetamine manufacturing.  (Resp. Ex. B at 47.)   It is within the bounds of fair advocacy for a prosecutor to ask the jury to draw inferences from the evidence that the prosecutor believes in good faith might be true.  See United States v. Blueford, 312 F.3d at 968 (9th Cir. 2002) (asking the jury to infer that a defendant had fabricated alibi defense in certain telephone calls with witnesses in the weeks just before the trial violated

1   defendant's right to a fair trial when the government had evidence contradicting such

2   inferences).  The prosecutor's arguing that the evidence will show the petitioner's guilt

3   beyond a reasonable doubt is precisely the kind of argument that is properly made in

4   opening statement.  Petitioner cites no authority, and the Court is aware of none,

5   indicating that such comments are improper, let alone that they render the trial

6   fundamentally unfair so as to violate due process.  Consequently, habeas relief is not

7   warranted on this claim.

8                    b.      Defense Counsel

9           Petitioner complains the prosecutor "attacked" defense counsel by making the

10  following statement during closing argument: "I've known Mr. Hernandez for quite some

11  time, and I respect his ability here in the courtroom.  He's a reasonable man.  He is an

12  honest advocate for his clients and his position, but he's not always right, and I don't

13  think he's right today."  (Resp. Ex. B at 325.)  To be sure, a prosecutor may not

14  gratuitously attack defense counsel's integrity and veracity.  See Bruno v. Rushen, 721

15  F.2d 1193, 1195 (9th Cir. 1983).  Here, however, the prosecutor did not attack defense

16  counsel, his integrity or his veracity.  To the contrary, the comments cited by petitioner

17  praised defense counsel's integrity, reasonableness, and courtroom ability.  Simply

18  arguing that defense counsel is wrong does not amount to an attack on defense counsel or

19  his integrity.  Cf. id. (prosecutor attacking integrity of defense counsel without evidence

20  improper and error of constitutional dimension).  In addition, the prosecutor's saying, "I

21  don't think he's right," was not an expression of the prosecutor's personal opinion as to

22  petitioner's guilt.  Cf. United States v. Younger, 398 F.3d 1179, 1190 (9th Cir. 2005)

23  (holding prosecutor may not express his personal opinion of the defendant's guilt).  The

24  prosecutor did not state that he believed petitioner was guilty, or that he believed defense

25  counsel was wrong on the question of petitioner's guilt or innocence.  The prosecutor

26  could have been referring to defense counsel being wrong about a particular legal point,

27

28  Order Denying Petition for a Writ of Habeas Corpus
    N:\Pro - Se\8.20.2007\04-02972 Villasenor02972_deny.wpd        13

1   piece of evidence, or a myriad of other particular issues arising at trial.  "A court should

2   not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging

3   meaning or that a jury, sitting through a lengthy exhortation will draw that meaning from

4   the plethora of less damaging interpretations."  <u>Williams v. Borg</u>, 139 F.3d 737, 744 (9th

5   Cir. 1998).  The prosecutor's statement cited by petitioner was largely laudatory of

6   defense counsel, and contained only a brief and ambiguous statement that did not express

7   any opinion on petitioner's guilty.  Consequently, the prosecutor's remarks did not violate

8   petitioner's right to due process and do not warrant federal habeas relief.

9                    c.    <u>Petitioner's Testimony</u>

10          Petitioner argues the prosecutor committed misconduct by making the following

11   comment about petitioner's testimony during closing argument: "Once again, it's our

12   position that Mr. Villasenor's testimony, his story, is not reasonable, it is not truthful, and

13   it should not be believed."  (Resp. Ex. B at 325.)  A prosecutor does not engage in

14   misconduct when he labels a witness's testimony as lacking credibility, or including lies

15   or fabrication.  <u>See</u> <u>Turner v. Marshall</u>, 63 F.3d 807, 818 (9th Cir. 1995), <u>overruled on</u>

16   <u>other grounds by</u> <u>Tolbert v. Page</u>, 182 F.3d 677, 685 (9th Cir. 1999) (en banc).  Where, as

17   here, the truth of the testimony of conflicting witnesses is the principal issue of the trial,

18   the prosecutor may argue that the other side is not telling the truth.  <u>See</u> <u>United States v.</u>

19   <u>Trevino</u>, 419 F.3d 896, 902 (9th Cir. 2005).  The prosecutor simply argued that

20   petitioner's testimony about waiting for a friend at the methamphetamine lab was not true

21   and should not be believed.  This argument was entirely appropriate given that the truth of

22   this testimony was the central issue of the case.  Accordingly, the prosecutor did not

23   violate petitioner's right to due process, and habeas relief is not warranted on this claim.

24                    3.    <u>Eighth Amendment</u>

25          Petitioner argues that his sentence of 19 years in state prison amounts to cruel and

26   unusual punishment, in violation of his rights under the Eighth Amendment.  A criminal

27

28   Order Denying Petition for a Writ of Habeas Corpus
     N:\Pro - Se\8.20.2007\04-02972 Villasenor02972_deny.wpd          14

*United States District Court*
For the Northern District of California

1    sentence proportionate to the crime for which the defendant was convicted does not

2    violate the Eighth Amendment.  <u>Solem v. Helm</u>, 463 U.S. 277, 303 (1983) (sentence of

3    life imprisonment without possibility of parole for seventh nonviolent felony violates 8th

4    Amendment).  "Successful challenges to the proportionality of particular sentences will

5    be exceedingly rare."  <u>Id.</u> at 289-90.   Since <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991),

6    only extreme sentences that are "grossly disproportionate" to the crime violate the Eighth

7    Amendment.  <u>United States v. Carr</u>, 56 F.3d 38, 39 (9th Cir. 1995).

8         Here, petitioner was sentenced to 19 years in state prison for manufacturing

9    methamphetamine in relatively large quantities, as well as other related offenses.  Longer

10   sentences than petitioner's for less serious crimes than those of which petitioner was

11   convicted have been held to not be "grossly disproportionate" under the Eighth

12   Amendment.  <u>See, e.g.</u>, <u>Ewing v. California</u>, 538 U.S.11, 24-25 (2003) (sentence of 25

13   years to life for conviction of grand theft with prior convictions was not grossly

14   disproportionate); <u>Harmelin</u>, 501 U.S. at 1005 (mandatory sentence of life without

15   possibility of parole for first offense of possession of 672 grams of cocaine did not raise

16   inference of gross disproportionality); <u>Rummel v. Estelle</u>, 445 U.S. 263, 284-85 (1980)

17   (upholding life sentence with possibility of parole for recidivist convicted of fraudulent

18   use of credit card for $80, passing forged check for $28.36 and obtaining $120.75 under

19   false pretenses); <u>Taylor v. Lewis</u>, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (upholding

20   sentence of twenty-five years-to-life for possession of .036 grams of cocaine base where

21   petitioner served multiple prior prison terms and his prior offenses involved violence and

22   crimes against a person); <u>Alford v. Rolfs</u>, 867 F.2d 1216, 1221-23 (9th Cir. 1989)

23   (upholding life sentence with possibility of parole for possession of stolen property worth

24   $17,000 and having three prior non-violent convictions, including possession of a

25   controlled substance and forgery).  In light of this authority, petitioner's sentence does not

26   violate the Eighth Amendment's prohibition against cruel and unusual punishment so as

27

28   Order Denying Petition for a Writ of Habeas Corpus
     N:\Pro - Se\8.20.2007\04-02972 Villasenor02972_deny.wpd        15

to warrant habeas relief.

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

DATED: _____August 9, 2007_____          _____

JAMES WARE
United States District Judge